IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANKLIN DALE BROWNER, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 16-6237 |
| NANCY A. BERRYHILL,[1] | |
| Defendant. | |

## OPINION

**Slomsky, J.**                                                                 **June 19, 2018**

## I.     INTRODUCTION

Before the Court are the Objections of Plaintiff Franklin Dale Browner to the Report and

Recommendation of United States Magistrate Judge Timothy R. Rice.  (Doc. No. 16.)  On

December 2, 2016, Plaintiff filed a Complaint against Defendant Nancy A. Berryhill, acting

Commissioner of Social Security Administration ("SSA"), seeking review of the final decision of

Defendant, which denied Plaintiff's claim for disability insurance benefits ("DIB") under Title II

of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434.  (Doc. No. 3.)  On July 30, 2017, the

Court referred this matter to Magistrate Judge Rice for a Report and Recommendation ("R&R").

(Doc. No. 14.)  On October 18, 2017, Magistrate Judge Rice issued the R&R, recommending

that Plaintiff's request for review be denied.  (Doc. No. 15.)  On October 31, 2017, Plaintiff

---

[1]     Nancy A. Berryhill is the current acting Commissioner of the Social Security Administration.
Pursuant to Rule 24(d) of the Federal Rules of Civil Procedure, Berryhill replaces Carolyn W.
Colvin as Defendant in this case, and no further action is needed to meet the requirement of
the final sentence of 42 U.S.C. § 405(g), which states:

> Any action instituted in accordance with this subsection shall survive
> notwithstanding any change in the person occupying the office of Commissioner
> of Social Security or any vacancy in such office.

timely filed Objections to the R&R. (Doc. No. 16.) On November 13, 2017, Defendant filed a Response to Plaintiff's Objections (Doc. No. 18), and on November 21, 2017, Plaintiff filed a Reply to Defendant's Response. (Doc. No. 19.) On December 1, 2017, Defendant filed a Corrected Response to Plaintiff's Objections. (Doc. No. 23.)

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a <u>de novo</u> review of the portions of the R&R to which objections have been made. After independently reviewing the Administrative Record ("Record") and for reasons that follow, the Court will adopt and approve the R&R (Doc. No. 16) in its entirety.

## II. BACKGROUND

### A. Factual and Procedural History

Plaintiff Franklin Dale Browner was born on August 3, 1963[2] and was forty-seven years old on December 15, 2010, the date his alleged disability began. (Administrative Record ("R.") at 33.) Plaintiff has a tenth-grade education and does not have a General Education Development ("GED") degree. (R. at 34, 50.) Plaintiff previously worked as a nurse's assistant, a housekeeping aide, a trailer loader and unloader, and a furniture framer. (R. at 35-37.) At the time of his administrative hearing, he had not received any income since December 2010 and was on welfare. (R. at 33-34.) At his hearing, Plaintiff stated that he was living in a house with his retired mother and her two young adopted children. (R. at 34-35, 71.)

---

[2]    A form titled, "claimant information" contained in the Administrative Record lists Plaintiff's date of birth as 08/20/1963. (R. at 96.) This is inconsistent with Plaintiff's testimony during the July 3, 2013 hearing before the Administrative Law Judge during which he stated that August 3, 1963 was his date of birth. (R. at 33.) The discrepancy, however, is not material to a decision on the Objections.

On April 11, 2012, Plaintiff applied for DIB, alleging a disability beginning on December 15, 2010. (R. at 11.) It was based upon fibromyalgia[3]; neck pain; back pain; shoulder pain; hip pain; knee pain; and arthritis. (R. at 96.) His claim was denied, and Plaintiff requested a hearing. (R. at 6.) An administrative hearing was held on July 3, 2013 in Philadelphia, Pennsylvania before Administrative Law Judge Jennifer M. Lash (the "ALJ"). (R. at 27.) At the hearing, Plaintiff and Sherry Pistone-Tiversi, an impartial vocational expert ("VE"), testified. (Id.) Plaintiff was represented by counsel.[4] (Id.)

Plaintiff testified at the hearing that he stopped working in December 2010 because his father, who took him to work, got sick and Plaintiff had no way of getting to his job. (R. at 35, 41.) He claimed that he suffers from severe pain, particularly on the left side of his body, running from his neck down to his legs. (R. at 49.) He has trouble sitting and standing for over ten minutes, and can only walk for approximately ten minutes. (R. at 45.) At the time of his hearing, Plaintiff had been using a cane for approximately four months without a doctor's prescription or recommendation. (Id.) He testified that his treating rheumatologist was Dr. Lawrence Brent. (R. at 43, 97.) With respect to his daily routine, he told the ALJ:

> Well I get up, I wash myself, I take my medicine, I cook me something to eat, and then I sit down and, then the medicine start working, and then I fall asleep and wake up maybe a couple hours or maybe 45 minutes. Maybe look at some TV and it's about it.

(R. at 46.)

---

[3] Fibromyalgia is a "chronic condition that produces long-term but variable levels of muscle and joint pain, stiffness and fatigue." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law & Procedure in Federal Court § 5.71 (2018).

[4] At the July 3, 2013 hearing, the ALJ directed Plaintiff's counsel to update the record to include recent medical documents within twenty days of the hearing. (R. at 42.) No additional medical records were produced following this directive and before the ALJ rendered her decision on October 21, 2013.

Plaintiff testified that he typically sleeps for approximately forty-five minutes to one hour because of his pain.  (R. at 53.)  He frequently takes a brief nap during the day because of the minimal rest he has.  (Id.)  He uses a high chair to sit on while he microwaves frozen meals.  (R. at 52-53.)  He also uses it in the shower while he washes himself. (R. at 52-53, 362.)  Plaintiff said that sometime in the summer of 2012, he suffered a dog bite on his left hand.  (R. at 41-42.)  Because of this dog bite, he has difficulty "squeezing things and moving [his] wrist, and basically picking up things."  (R. at 43.)  He has not received any therapy for this injury but wears a brace prescribed by an orthopedic doctor.  (Id.)  Moreover, Dr. Brent advised Plaintiff to attend physical therapy but Plaintiff is on a waitlist and has not yet received therapy.  (R. at 44.)

When asked how his symptoms were progressing, Plaintiff stated they were worsening:

Q:      And how is - - which symptoms are worsened?

A:      My back center, my back lower lumbar, my shoulders, my knees, my hips,
         my ankles, practically my whole body.  Okay.

Q:      And what's going on in all those parts of your body?

A:      I'm having awful pain, very awful pain.

(R. at 53-54.)

The VE testified that Plaintiff's past work as a nurse's assistant and a furniture assembler were both classified as semi-skilled and heavy work in the Dictionary of Occupational Titles. (R. at 58.)  The ALJ posed a series of hypotheticals to the VE.  She asked if a person of Plaintiff's age, physical limitations, education, and work history would have the skills necessary to perform unskilled occupations.  (R. at 58-60.)  The VE explained that given Plaintiff's profile, any work that he could do would have to be light.  (R. at 59.)  Assuming Plaintiff could perform such work, the VE testified that he could perform as a linen folder, an inspector, or a garment sorter.  (R. at 59-60.)

On October 21, 2013, the ALJ denied Plaintiff's claim for DIB. (R. at 121, 127.) On February 11, 2015, the SSA's Appeals Council remanded the decision back to the ALJ with instructions to evaluate the fibromyalgia in accordance with Social Security Ruling ("SSR") 12-2P[5] and address non-medical opinion statements given by Plaintiff's mother in support of his DIB application.[6] (R. at 127-129.)

On June 18, 2015, Plaintiff appeared before ALJ Lash for a second hearing. (R. at 67.) Since the 2013 hearing, Plaintiff had not received additional education or obtained employment. (R. at 70-72.) Once more, he testified to the pain he experienced, complaining of "fibromyalgia and a little bit of arthritis in [his] back and . . . widespread pain going through [his] body." (R. at 73.) When asked how long Plaintiff had suffered from this pain, he stated:

> I've been having this pain for about three years now. I mean, actually I had it before I came down to Philadelphia but it got worse as I'm here so let's say I had

---

[5] SSR 12-2P Social Security ruling provides agency guidance on how to "develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [to] evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-2P, 2012 WL 3104869, at *1 (July 25, 2012).

[6] On January 15, 2013, Juanita Browner, Plaintiff's mother, wrote a letter to Plaintiff's counsel stating:

> I am writing this letter on the behalf of my son Franklin D. Browner. I have seen my son suffering so tremendously with this pain for quite [awhile.] He always feels fatigue, difficult[y] thinking clearly, difficult[y] performing everyday tasks, and problems of sleeping and [is] always depress[ed.] He went to see his Rheumatology <u>Dr. Lawrence H. Brent</u>. [He] was [diagnosed] with <u>fibromyalgia</u> . . . .

(R. at 380). On June 2, 2015, Ms. Browner submitted a second message stating:

> I have seen my son Franklin Browner 50 yrs. of age in body pain where he'll be in bed for 3-4 days straight, at time he'll yell out loud in pain, no activities except for personal needs (eating & use of bath room).

(R. at 406.)

> this pain at least about, I'd say 20 years out of my life but it got worse so I went to a doctor and got it checked out and they diagnosed me with fibromyalgia.

(R. at 73.)

He again complained about his physical limitations as a result of his pain, such as the discomfort he experiences while sitting and standing for several minutes. (R. at 74, 82.) He also described the same side effects from his medications that he testified about in 2013. (R. at 78.) He identified Dr. Lawrence Brent again as his rheumatologist and Dr. Azra Qureshi as his primary care physician. (R. at 76.) Plaintiff additionally told the ALJ that he experienced mood changes, specifically feelings of hostility and depression. (R. at 79.)

Another VE, Nancy Harter, was also present at Plaintiff's 2015 hearing, and responded to the following questions from Plaintiff's counsel and the ALJ:

> Q:   What I would like to know is if everything that the claimant testified to today were accepted by you and considered by you is there any type of work that he can do?
>
> A:   Well, I can't respond to a complete summary if you can give me specifics there. I know he talked about how far, I mean, how much he could lift, et cetera and the problems he had with his hands. If you could just put for me - -
>
> ALJ: Let's just [say] for example an individual who would spend 20 hours a day in bed - -
>
> VE:  No.
>
> ALJ: So that individual probably wouldn't even be present at work.
>
> VE:  No.

(R. at 94.)

When asked about his daily activities, Plaintiff reiterated that he has trouble sitting and standing for extended periods of time. (R. at 84.) With respect to his daily activities, he testified that he rarely leaves the house except to smoke a cigarette or to go shopping with his family. (R.

at 87.)  Plaintiff also stated that he goes for a walk twice a week for approximately a quarter of a mile before his stiffness sets in.  (Id.)  He testified that he is able to do light chores, such as cleaning up after a meal and washing dishes.  (R. at 88.)  Plaintiff remarked that he has difficulty carrying lightweight items throughout the day.  (Id.)

On August 24, 2015, the ALJ denied Plaintiff's claim.  (R. at 12.)  The ALJ determined that Plaintiff had four severe impairments: severe fibromyalgia; degenerative disc disease[7] of the lumbar spine; degenerative disc disease of the thoracic spine; and de Quervain's disease.[8]  (R. at 14-16.)  In applying the SSA's five-step sequential process[9] and considering Plaintiff's treatment history, medications, and daily activities, however, the ALJ found that these impairments did not meet or were medically equal to the severity of an impairment in a Listing.[10]  The ALJ also concluded that Plaintiff had the Residual Functional Capacity ("RFC") to perform limited light work.[11]  (R. at 17.)  She was not persuaded that Plaintiff's impairments were as severe as alleged.  (R. at 19.)  She also gave little weight to Dr. Brent's assessment of Plaintiff because it was "not

---

[7]  Degenerative disc disease is a deterioration of the intervertebral disc to a less functionally active form.  Dorland's Illustrated Medical Dictionary at 479, 526 (32d ed. 2012) [hereinafter Dorland's].  The cervical spine is located at the neck, the thoracic spine is located at the chest, and the lumbar spine is located between the chest and the pelvis.  Id. at 333, 1077, 1920.

[8]  De Quervain's disease is a forearm overuse injury.  Dorland's, supra note 7, at 532.

[9]  This is the SSA's analysis to evaluate a disability, which will be explained further in this Opinion.

[10]  A Listing refers to the Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R., which is a regulatory scheme used to evaluate DIB applications by identifying certain medical impairments "that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a)).  The listing of impairments was "designed to operate as a presumption of disability that makes further inquiry unnecessary."  Id.

[11]  In her 2015 decision, the ALJ relied on statements made by the VE who testified at the 2013 hearing for evaluating Plaintiff's RFC.

well supported by medically accepted clinical and diagnostic findings" and was "inconsistent with the radiological studies of record and other substantial medical evidence." (Id.) The ALJ also gave little weight to Plaintiff's mother's opinion, given that they were "lay opinions based upon casual observation, rather than objective medical examination and testing." (Id.) She also noted the mother's potential for bias in favor of her son. (Id.)

On December 2, 2016, Plaintiff requested judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 3.) He alleges that the ALJ erred by failing to: (1) properly weigh the medical opinion of his treating physician; (2) fully credit his allegations of disabling pain; (3) adequately develop the medical record; and (4) support the RFC assessment with substantial evidence. (Doc. No. 11 at 7-11; Doc. No. 15 at 1.)

As previously noted, on July 14, 2017, the Court referred the matter to United States Magistrate Judge Timothy R. Rice for an R&R (Doc. No. 14), and on October 18, 2017, Magistrate Judge Rice issued the R&R recommending that Plaintiff's Request for Review be denied. (Doc. No. 15.) On October 31, 2017, Plaintiff timely filed the Objections that are now before this Court for consideration. (Doc. No. 16.)

**B. Relevant Social Security Administration Regulations**

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If he does so, the burden shifts to the Commissioner of Social Security ("the Commissioner") to show that, given the

claimant's age, education, and work experience, she is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the SSA uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

§ 404.1520(a)(4)(i)-(v).

Between the third and fourth steps, the SSA assesses a claimant's residual functional capacity, which is "the most [a claimant] can do despite [their] limitations." § 404.1545(a)(1). The SSA uses the RFC assessment at Step Four to determine if the claimant is able to do their "past relevant work." § 404.1545(a)(5)(i). "Past relevant work" is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." § 404.1560(b)(1).

### III.    STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)).  The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding.  Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1).[12]  An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision.  See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003).  Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as her finding of fact.  Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable

---

[12]   Section 405(b)(1) provides in relevant part:

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based  . . . .

42 U.S.C. § 405(b)(1).

mind might accept as adequate," not "a mere scintilla." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 118 (3d Cir. 2000) (citing <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999)).

## IV.     THE ALJ'S DECISION

At the hearing on July 3, 2013, the ALJ heard testimony from Plaintiff and VE Sherry Pistone-Tiversi (R. at 27) and at the hearing on June 18, 2015, the ALJ heard testimony from Plaintiff and VE Nancy Harter.    (R. at 65.)    Additionally, the ALJ considered the medical opinions of Plaintiff's treating rheumatologist, Dr. Lawrence Brent, and Plaintiff's primary care physician, Dr. Azra Qureshi, as well as various other medical records and evaluations.  (R. at 11.) After reviewing the evidence in the Record, and proceeding through the five-step evaluation process, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12.)

First, at step one, the ALJ determined Plaintiff had not engaged in any substantial gainful activity since the alleged onset date.  (R. at 13.)  At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: fibromyalgia; degenerative disc disease of the lumbar and thoracic spines; and de Quervain's disease.  (R. at 14.)  She found that the dog bite injury to Plaintiff's left hand was non-severe for the purposes of the DIB determination because it resulted in less than minimal work-related limitations.  (<u>Id.</u>)  At step three, the ALJ reviewed the evidence and determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 15.)  She reviewed Plaintiff's fibromyalgia under the framework of Listing 14.09, inflammatory arthritis, which is included in Part 404.[13]  (R. at 16.)

---

[13]     In pertinent part, SSR 12-2P states:

> [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment.  At step 3, therefore, we determine whether [fibromyalgia]

At step four, the ALJ concluded that Plaintiff had the RFC to perform light work that is limited to jobs with routine, repetitive tasks that do not require climbing ladders, ropes, or scaffolds, constant reaching, handling, fingering, or feeling with the left-non-dominant upper extremity.  (R. at 16.)  The jobs should not require Plaintiff to be exposed to hazards, including moving machinery and unprotected heights and should be limited to those that require only occasional interaction with co-workers and supervisors.  (<u>Id.</u>)  The ALJ further determined that Plaintiff is unable to perform his past relevant work as a nursing assistant and a furniture assembler because the physical and mental demands of those jobs exceeded Plaintiff's current RFC.  (R. at 20.)

At step five, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff could perform.  (<u>Id.</u>)  The ALJ considered the opinion of two VEs.  At the July 3, 2013 hearing, VE Pistone-Tiversi testified that based upon Plaintiff's age, education, work experience, and RFC, there were occupations available to Plaintiff that existed in substantial numbers in the national economy, including jobs as a folder, inspector, or garment sorter.  (R. at 21.)  Therefore, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (<u>Id.</u>)

V.  **DISCUSSION**

On June 5, 2017, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Request for Review").  (Doc. No. 11.)  In his Request for Review, Plaintiff raised the following seven issues:

medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

2012 WL 3104869, at *6 (July 25, 2012).

(1) Whether the ALJ violated the Treating Physician Rule.

(2) Whether the ALJ misstated the applicable legal standards for considering a fibromyalgia diagnosis.

(3) Whether the ALJ failed to consider the effect of Plaintiff's allegations of pain and functional limitations on his ability to do work.

(4) Whether the ALJ misstated facts about Plaintiff's treatment history.

(5) Whether the ALJ misstated the meaning of test results and the absence of objective medical evidence.

(6) Whether the ALJ mischaracterized the record and expressed it in a misleading manner.

(7) Whether the ALJ denied Plaintiff his substantive due process rights during the administrative process.

(Id.)

Upon review of these seven issues, four overarching points emerge from Plaintiff's Request for Review: (1) that the ALJ failed to treat Dr. Brent's testimony with controlling weight; (2) that the ALJ failed to fully credit Plaintiff's allegations of pain; (3) that the ALJ failed to adequately develop the medical record; and (4) the ALJ's RFC assessment was unsupported by substantial evidence.

On October 18, 2017, after considering the ALJ's Decision and the Administrative Record, Magistrate Judge Rice issued an R&R finding that there was substantial evidence to support the ALJ's denial of benefits and recommending that the Court affirm the ALJ's decision to deny Plaintiff's claim for DIB under Title II of the Social Security Act. (Doc. No. 15.)

Plaintiff has made three objections to Magistrate Judge Rice's R&R. (Doc. No. 16.) First, he asserts that the ALJ improperly concluded that Plaintiff's fibromyalgia did not constitute

an impairment either by itself or in combination with other impairments that meets or medically equals the severity of one of the listed impairments as recognized by Appendix 1 of 20 C.F.R. § 404.1520(d).  (Id. at 1-2.)  Second, he argues that Dr. Brent's medical opinion should have been treated with more weight because it is consistent with other medical evidence in the record and Plaintiff's testimony.  (Id. at 2.) Third, he argues that the ALJ failed to evaluate properly Plaintiff's RFC because she "did not address how a person with body wide pain who is abed 20 hours a day would perform the tasks of full time light duty employment nor did she address what specific inconsistencies she found between the physician's findings of 'poor function' and [Plaintiff's] own testimony."  (Id. at 3.)   These objections are essentially restatements of the previous issues presented in the Request for Review.   Nonetheless, Plaintiff's Objections are entitled to de novo review by this Court.  Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). The Court will discuss each Objection seriatim.

### A. Plaintiff Fails to Meet His Burden to Show that the ALJ's Step Three Determination of Fibromyalgia Constituted Error

In concluding that Plaintiff's fibromyalgia was not an impairment or medically equals the severity of a listed impairment in 20 C.F.R. § 404.1520(d), the ALJ did not commit error because her decision was supported by sufficient evidence in the record and she sufficiently explained her findings.

"An ALJ need not 'use particular language or adhere to a particular format in conducting [her] analysis,' as long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'"  Holloman v. Comm'r of Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (quoting Jones v. Barnhart, 364 F.3d 501 505 (3d Cir. 2004)).  In Holloman, plaintiff challenged the ALJ's step three determination, arguing that the ALJ insufficiently

compared Plaintiff's impairments to the listed impairments in 20 C.F.R. § 404.1520(d). <u>Id.</u> The Third Circuit disagreed and held:

> Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to administrative appeals. <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009). Holloman, therefore must "<u>explain</u> [] . . . how the . . . error to which he points could have made any difference. Holloman merely asserts that harm was done because a positive finding at step three would have eliminated the need to proceed through steps four and five. But that assertion entirely sidesteps the question, which is <u>how</u> Holloman might have prevailed at step three if the ALJ's analysis had been more thorough.

<u>Id.</u> (emphasis in original).

In this case, Plaintiff asserts: "It is the belief of the Plaintiff that the administrative decision and the Report and Recommendation demonstrate that nobody involved in this matter has a satisfactory understanding of the disease process and symptoms of fibromyalgia necessary to properly evaluate this plaintiff's case." (Doc. No. 16 at 1.) Put another way, Plaintiff challenges the ALJ's conclusion that Plaintiff's fibromyalgia did not medically equal a listing either by itself or in combination with another medically determinable impairment.

The ALJ relied on the guidance of SSR 12-2P for how to evaluate fibromyalgia at step 3 of SSA's five-step sequential process. SSR 12-2P instructs that to determine whether fibromyalgia medically equals a listed impairment, an ALJ must evaluate whether it "medically equals a listing (<u>for example</u>, listing 14.09D in the listing for inflammatory arthritis) or whether it medically equals a listing in combination with at least one other medically determinable impairment." 2012 WL 3104869, at *6 (emphasis added). Thus, SSR 12-2P does not mandate an ALJ to consider fibromyalgia as medically equal to inflammatory arthritis; it merely <u>suggests</u> the listing as one example against which fibromyalgia may be considered.

Though the ALJ could have considered whether other impairments are medically equal to the fibromyalgia in addition to inflammatory arthritis, the fact that she did not does not constitute

error here.  Plaintiff has not shown that the analysis of the ALJ under the listing of inflammatory arthritis was improper, nor does he provide other "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not."  Holloman, 639 F. App'x at 814.  Furthermore, Plaintiff does not offer any explanation of how further analysis by the ALJ would have changed the outcome of his disability claim.

Accordingly, the ALJ did not commit error in determining Plaintiff's fibromyalgia was not an impairment, or was part of a combination of impairments, that met or medically equaled the severity of a listed impairment in 20 C.F.R. § 404.1520(d).

### B.  The ALJ Properly Weighed Dr. Brent's Medical Opinion

Plaintiff argues that the ALJ incorrectly afforded little weight to Dr. Brent's opinion and that this finding was improperly upheld by Magistrate Judge Rice in the R&R.   (Doc. No. 16 at 2.)  Plaintiff asserts that Dr. Brent's medical opinion was consistent with the medical evidence on the record and Plaintiff's own testimony before the ALJ.   (Id.) ALJ Lash, however, treated Dr. Brent's medical opinion with appropriate weight given that there was evidence contradicting his opinion in the record.

Generally, an ALJ must give great weight to a claimant's treating physician; however, an ALJ may discredit the treating physician's opinion if contradictory evidence appears in the record.  See 20 C.F.R § 404.15227(c); Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  While a treating physician relies on his or her own personal records of a plaintiff's impairments, the record before the ALJ contains additional information that creates a more complete and accurate presentation of a plaintiff's impairments.  Therefore, the ALJ is not bound by the opinion of any one physician and can reject an opinion if it lacks support or is contradicted by evidence in the record.  See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).  Moreover, the

pertinent inquiry now is whether the ALJ's findings were supported by substantial evidence, which is "such relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 401 U.S. 389, 410 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Here, the ALJ reviewed records from Dr. Brent and Dr. Qureshi as well as Plaintiff's testimony and letters received from Plaintiff's mother. In a fibromyalgia medical source statement dated November 2, 2012, Dr. Brent indicated that he was awaiting lab tests to determine the exclusion of other disorders that could cause repeated manifestations of symptoms that present as fibromyalgia. (R. at 494.) The medical source statement also shows that Dr. Brent examined Plaintiff twice by that time: once on March 18, 2012 and a second time on August 30, 2012. (Id.) Dr. Brent also indicated that Plaintiff met both the American College of Rheumatology criteria for fibromyalgia and the 2010 American College of Rheumatology's Preliminary Diagnostic criteria.[14] (Id.)

On July 24, 2012, Dr. Brent sent a letter to Dr. Qureshi stating that he examined Plaintiff again on that day. (R. at 509). Based upon the information contained in the letter, however, it appears that the primary reason for the examination was the dog bite injury Plaintiff suffered on his left hand and not his fibromyalgia. (Id.) On January 15, 2014, Dr. Brent again saw Plaintiff and noted his diagnosis and assessment of Plaintiff as fibromyalgia, HTN (hypertension), and depression. (R. at 536.) On May 21, 2014, Dr. Brent saw Plaintiff and this time listed his diagnosis and assessment as fibromyalgia and HTN. (R. at 538.) On May 20, 2013, Dr. Brent saw Plaintiff, diagnosing and assessing him again for fibromyalgia. (R. at 504.)

---

[14] SSR 12-2P states that these two sets of criteria can be relied upon to establish that a person has a medically determinable impairment of fibromyalgia. See SSR 12-2P, 2012 WL 3104869, at *2 (July 25, 2012).

Plaintiff argues that Dr. Brent's opinion was supported because no laboratory or x-ray study provided an alternative cause for Plaintiff's symptoms other than fibromyalgia. (Doc. No. 11 at 8.) He further notes that there is "no objective study, such as a lab test or an x-ray to establish the diagnosis." (Id. at 1-2.) However, Dr. Brent noted that there were pending lab results which would confirm whether or not there were other sources for Plaintiff's symptoms. These results were never produced. (R. at 464.) Thus, without confirmation to exclude other diagnoses, it was proper for the ALJ to conclude that Plaintiff's fibromyalgia did not medically equate with a medically determinable impairment[15] because there was inconclusive evidence as to any potential alternative causes of Plaintiff's pain symptoms.

The ALJ also considered that Dr. Brent did "not perform [a] function assessment" with respect to Plaintiff's manipulative—i.e., related to the hand—limitations. (R. at 544-45.) Additionally, in analyzing Plaintiff's impairments under the SSA framework for "inflammatory arthritis" (R. at 16), the ALJ noted that a radiology exam dated January 30, 2012 reported fair results: "[Plaintiff's] bones are normally mineralized. There is no fracture or dislocation. No arthritic changes are identified. No soft tissue abnormalities are seen." (R. at 443.) On the same day, a thoracic exam confirmed that Plaintiff's "vertebra are normal in statute and contour . . . The findings are all compatible with mild degenerative arthritis in otherwise normal thoracic spine." (R. at 445.) Thus, the ALJ properly evaluated Plaintiff's fibromyalgia in accordance with SSR 12-2P to determine whether it medically equals a listing either by itself or in combination with another medically determinable impairment.

The ALJ was also permitted to consider Plaintiff's own testimony during his hearings. At the 2015 hearing, Plaintiff stated that he was able to walk briefly, for approximately a quarter of

---

[15]    As recognized by Appendix 1 of 20 C.F.R. § 404.1520(d).

a mile. (R. at 85.) He also informed the ALJ that he was able to take public transportation. (R. at 91.) His statements about his use of transportation supported a Function Report dated May 6, 2012 completed by Plaintiff. (R. at 363.) In the Report, Plaintiff states that he uses public transportation to go to doctors' appointments and shop for food. (Id.) He also states that he is able to go outside independently. (Id.) In the same Report, Plaintiff noted that he is able to wash clothes and dishes, taking approximately thirty minutes to complete each task. (R. at 362.) He does not need help or encouragement from others in doing these chores. (Id.)

In sum, ALJ Lash considered Dr. Brent's medical opinion and weighed that against any contradictory evidence. In analyzing Plaintiff's fibromyalgia under the listing of inflammatory arthritis, she reasonably looked at medical records describing any pain or inflammation in Plaintiff's joints and musculoskeletal system. The ALJ also noted the contradictory evidence Plaintiff himself provided with respect to his abilities, acknowledging in her findings that Plaintiff was able to engage in light chores, walk short distances, and take public transportation. (R. at 15, 17, 18.) Upon consideration of Plaintiff's actual abilities, the ALJ reasonably concluded that his pain was not as severe as reported. Given the lack of lab reports with diagnoses that would exclude alternate causes of Plaintiff's pain, contradicting medical records, and conflicting testimony by the Plaintiff, the ALJ acted within her authority to give less weight to Dr. Brent's opinion.

### C. The ALJ's Determination that Plaintiff Had the Residual Functional Capacity to Perform Light Work Was Supported by Evidence in the Record

The ALJ properly found that Plaintiff had RFC. Her findings were supported by substantial evidence which included Plaintiff's testimony and submissions that he was able to engage in light activity.

In determining RFC, an ALJ must consider all the evidence before her. <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 121 (3d Cir. 2000). "[T]he ALJ's finding of [RFC] must be 'accompanied by a clear and satisfactory explication of the basis on which it rests.'" <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 41 (3d Cir. 2001) (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)). An ALJ "must not 'reject evidence for no reason or for the wrong reason,' but 'may choose whom to credit' when considering conflicting evidence. <u>Kerdman v. Comm'r of Soc. Sec.</u>, 607 F. App'x 141, 144 (3d Cir. 2015) (quoting <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999)).

Plaintiff argues that the ALJ failed to abide by SSR 96-8P, which sets forth the policy interpreting ruling on assessments of residual functional capacity in initial claims for disability benefits under SSA. <u>See</u> SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). In particular, he contends that the ALJ failed to "address how a person with body wide pain who is abed 20 hours a day would perform the tasks of full time light duty employment nor did she address what specific inconsistencies she found between the physician's findings of 'poor' function and [Plaintiff's] own testimony." (Doc. No 16 at 3.) Reiterating an earlier point, Plaintiff also emphasizes that the ALJ should have assigned greater weight to Dr. Brent's opinion concerning what Plaintiff "can and cannot do." (<u>Id.</u>)

At the 2013 hearing, although Plaintiff purportedly had been suffering from fibromyalgia since the 1980s (R. at 31), he stated that he had stopped working because his father could no longer transport him to his job. (R. at 41.) Thus, the ALJ reasonably inferred that Plaintiff's "impairment(s) would not prevent the performance of that job, since it was being performed adequately at the time [Plaintiff] stopped working for unrelated reasons." (R. at 18.) The ALJ also considered the fact that Plaintiff testified that he was able to engage in "daily activities

including taking public transportation, caring for personal needs, socializing with family members, performing household chores, shopping, and leaving the house regularly to smoke and take walks." (Id.)  She ultimately concluded that although Plaintiff's impairments, including his fibromyalgia, could "reasonably be expected to cause the alleged symptoms [of pain and stiffness]," the "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Id.)

Furthermore, as discussed previously, the ALJ was proper to accord less weight to Dr. Brent's opinion because there was contradictory evidence in the record.  The ALJ reviewed Plaintiff's evidentiary record and noted that there was a lack of "persistent attempts to seek treatment from specialists since the alleged onset date" of December 15, 2010.  (R. at 18.)  With respect to the medical records, the ALJ noted that Dr. Brent had not completed a complete function assessment of Plaintiff's abilities, nor did he list any specific work-related limitations. (See R. at 544-45.)  Moreover, on a supplemental medical source statement dated May 19, 2015, Dr. Brent noted Plaintiff's symptoms remained stable in the past year.  (R. at 533.)  This prognosis directly contradicted Plaintiff's own testimony during the 2015 hearing that his symptoms were worsening.  (R. at 53-54.)

Finally, SSR 96-8P includes the following instruction:

[W]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

1996 WL 374184, at *3 (July 2, 1996).

Thus, the ALJ properly found that Plaintiff had an RFC to perform light work[16] and routine, repetitive tasks but would be precluded from climbing ladders, ropes, or scaffolds and manipulative skills involving the left, non-dominant upper extremity. (R. at 17.)

## VI. CONCLUSION

Plaintiff's objections to the R&R filed by Magistrate Judge Rice will be overruled. The Court will approve and adopt the R&R of Magistrate Judge Rice in its entirety. An appropriate Order follows.

---

[16] 20 C.F.R. § 404.1527(b) states:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.